UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
NINETY-FIVE MADISON COMPANY, L.P.,

                       Plaintiff,

    -against-

VITRA INTERNATIONAL AG,

                       Defendant.
------------------------------------- x

MEMORANDUM DECISION
AND ORDER

19 Civ. 1745 (GBD)

GEORGE B. DANIELS, United States District Judge:

Plaintiff Ninety-Five Madison Company, L.P. brings this breach of contract action against Defendant Vitra International AG, which is the guarantor of a commercial lease between Plaintiff and Defendant's wholly owned subsidiary, non-party Vitra, Inc. ("Tenant"). (Compl., ECF No. 1.) Plaintiff alleges that Defendant is liable under the guaranty for Tenant's breaches of the lease, namely, *inter alia*, Tenant's failure to commence certain alterations promptly after execution of the lease, and to make certain expenditures for such alterations within nine months after commencement of the lease. (*Id.*) Defendant moves to dismiss Plaintiff's complaint for insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5) and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Notice of Mot., ECF No. 9.) Defendant's motion to dismiss for insufficient service of process is DENIED. However, its motion to dismiss for failure to state a claim is GRANTED.

### I. FACTUAL BACKGROUND

#### A. The Lease and the Guaranty.

Plaintiff, a New York corporation with its principal place of business in New York, entered into a commercial lease agreement dated June 18, 2016 with Tenant (the "Lease"), whereby Tenant leased certain portions of a building owned by Plaintiff. (Compl. ¶¶ 1, 6; *see also* Decl. of Mark

S. Olinsky ("Decl."), Ex. 3 (Lease), ECF No. 11-3.) The commencement date under the Lease was June 1, 2016. (Compl. ¶ 7.) Defendant, a Swiss corporation with its principal place of business in Switzerland, is Tenant's guarantor of the Lease pursuant to a guaranty dated June 14, 2016 (the "Guaranty"). (*Id.* ¶¶ 2, 9; *see also* Decl., Ex. 2 (Guaranty), ECF No. 11-2.)

The original Lease required Plaintiff to perform certain "Landlord's Work," including demolishing a mezzanine and erecting a new "demising wall" by July 31, 2016, as well as installing dunnage[1] for certain air conditioning units. (Decl., Ex. 3 (Lease), ¶ 52, Ex. D.) It required Tenant, in turn, to complete certain "Initial Alterations" "promptly after the date of execution of this Lease." (*Id.* ¶ 78(A).) Tenant committed to spend "within nine (9) months from the commencement of the Lease" a minimum of $1,912,500 with respect to these Initial Alterations, including $412,500 for a new elevator and building entrance. (*Id.*) The Lease provided Plaintiff authority to review and approve Tenant's alteration plans. (*Id.* ¶¶ 3, 56.) In the event that Tenant did not expend $1,912,500 within nine months from the commencement of the Lease, the Lease required Tenant to pay the unspent balance to Plaintiff, unless the amount had been deposited with Plaintiff and applied thereafter to the Initial Alterations. (*Id.* ¶ 78(A).) The Lease also stated that:

> Tenant, any guarantor of the performance of its obligations hereunder ("Guarantor") and their successors and assigns hereby subject themselves to the jurisdiction of any state or federal court located within [New York], waive the personal service of any process upon them in any action or proceedings therein and consent that such process be served by certified or registered mail, . . . directed . . . to Guarantor . . . . Such service shall be deemed made upon receipt.

(*Id.* ¶ 85.)

Under the Guaranty, Defendant guaranteed to Plaintiff "the full, faithful, timely and prompt payment of Annual Fixed Rent, Additional Rent . . . and all other sums, costs or charges payable

---

[1] Merriam Webster defines "dunnage" as "baggage" or "loose materials used to support and protect cargo in a ship's hold." *Dunnage*, Merriam Webster, https://www.merriam-webster.com/dictionary/dunnage.

2

by Tenant under the Lease." (Decl., Ex. 2 (Guaranty), § A.) Defendant also guaranteed "the full, faithful, timely and prompt performance and observance of all the covenants, terms, conditions and agreements in the Lease to be performed and observed by Tenant." (*Id.*) The Guaranty provided that "the liability of [Defendant] hereunder shall be based upon the obligations of Tenant set forth in the Lease as the same may be altered, . . . modified, [or] amended." (*Id.* § C.)

## B. The Action, Settlement, and Arbitration Between Plaintiff and Tenant.

In May 2017, Tenant commenced an action in New York state court against Plaintiff to terminate the Lease. (Decl., Ex. 4 (State Action Compl.), ECF No. 11-4.) Tenant alleged that Plaintiff never began the Landlord's Work, including the installation of the air conditioner dunnage, and that Plaintiff refused, with no valid basis, to approve Tenant's plans for the Initial Alterations. (*Id.* ¶¶ 20–39.) According to Tenant, Plaintiff's failure to complete the Landlord's Work and to approve Tenant's plans prevented Tenant from performing its own obligations under the Lease. (*See id.* ¶ 40.) Plaintiff filed counterclaims alleging that Tenant breached the Lease by not promptly commencing the Initial Alterations. (Decl., Ex. 5 (State Action Answer and Countercl.), ECF No. 11-5, ¶¶ 144–58.)

Plaintiff and Tenant ultimately resolved their claims and counterclaims in the state action by entering into a settlement (the "Settlement") on December 7, 2017. (Decl., Ex. 6 (Settlement), ECF No. 11-6.) Pursuant to the Settlement, Plaintiff approved Tenant's plans for the Initial Alterations and agreed to sign all necessary applications to the New York City Department of Buildings. (*Id.* ¶¶ 1–2.) The Settlement provided that Tenant would have nine months from Plaintiff's completion of the Landlord's Work to spend $1,912,500 for its Initial Alterations. (*Id.* ¶ 9.) It required Plaintiff to complete the Landlord's Work and install the air conditioner dunnage by April 16, 2018 and provided for rent abatement if such deadline was not met. (*Id.* ¶ 23.)

3

Plaintiff and Tenant agreed to arbitration of any disputes arising under the Settlement or relating to the Initial Alterations. (*Id.* ¶ 28.) Specifically, the Settlement provided that any and all disputes "arising out of or relating to the interpretation and enforcement of this agreement and tenant's alterations through the time tenant substantially opens for business shall be referred to the Honorable Steven Crane, as arbitrator, for binding determination as provided in accordance with the rules of JAMS." (*Id.*) It further stated that "the determination of Justice Crane . . . or any other arbitrator shall be final and binding upon the parties," and that "[t]he parties hereby waive any right to appeal any such determination." (*Id.*)

Subsequently, on April 20, 2018, Tenant commenced an arbitration, alleging that Plaintiff had not complied with the Settlement. (Decl., Ex. 7 (Arbitration Statement), ECF No. 11-7.) In particular, Tenant alleged that Plaintiff had yet to complete the Landlord's Work or install the air conditioner dunnage, and that Plaintiff continued to obstruct the regulatory approval of Tenant's Initial Alterations. (*Id.* at 19–26.)

The arbitrator issued an interim award on June 18, 2018. In the award, the arbitrator found that Plaintiff had completed the Landlord's Work on April 24, 2018. (Decl., Ex. 8 (First Interim Award), at 11.) Because the Settlement required Plaintiff to complete the Landlord's Work by April 16, 2018 and Plaintiff's completion of such work was therefore several days late, the arbitrator provided for abatement of rent between April 17 and April 24, 2018. (*See id.*) The arbitrator also approved Tenant's building entrance design and ordered Plaintiff to submit the necessary application for regulatory approval of such design. (*Id.* at 16–18.) Tenant subsequently began its Initial Alterations in October 2018. (Compl. ¶ 17.)

The arbitrator issued a second interim award on February 24, 2019. (Decl., Ex. 9 (Second Interim Award), ECF No. 11-9.) In this award, the arbitrator found, *inter alia*, that Tenant's delay

4

in commencing the Initial Alterations was due to Plaintiff's interference with the application for regulatory approval of Tenant's building entrance design. (*Id.* at 23.)

Following Tenant's motion for renewal of the issue of whether Plaintiff completed installing the air conditioner dunnage, the arbitrator issued a third interim award on March 10, 2019. (Decl., Ex. 10 (Third Interim Award), ECF No. 11-10.) The arbitrator found that Plaintiff had not, in fact, completed the Landlord's Work since it still had not installed the dunnage. (*Id.* at 5.) Accordingly, he vacated the finding in the first interim award that the Landlord's Work was completed on April 24, 2018, and he held that Tenant is entitled to an abatement of rent from April 17, 2018 until such dunnage is installed. (*Id.*) Plaintiff filed a motion for reconsideration of the third interim award, which the arbitrator denied on September 17, 2019. (Def.'s Letter dated Sept. 18, 2019, Ex. A (Order), ECF No. 24-1.)

## II. LEGAL STANDARDS

### C. Rule 12(b)(5) Motion to Dismiss.

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006) (citation omitted); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" (alteration in original) (citation omitted)). "[T]he plaintiff bears the burden of proving adequate service." *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005) (citation omitted). The plaintiff must, "through specific factual allegations and any supporting materials, make a prima facie showing that service was proper." *Kwon v. Yun*, No. 05 Civ. 1142 (GEL), 2006 WL 416375, at *2 (S.D.N.Y. Feb. 21, 2006) (collecting cases). "[I]n

considering a motion to dismiss pursuant to 12(b)(5) for insufficiency of process, a Court must look to matters outside the complaint to determine whether it has jurisdiction." *Mende v. Milestone Tech.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003) (alteration in original) (citation omitted).

## D. Rule 12(b)(6) Motion to Dismiss.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully"; stating a facially plausible claim requires the plaintiff to plead facts that enable the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The factual allegations pled must therefore "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).[2]

A district court must first review a plaintiff's complaint to identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then considers whether the plaintiff's remaining well-pleaded factual allegations, assumed to be true, "plausibly give rise to an entitlement to relief." *Id.*; *see also Targum v. Citrin Cooperman & Co., LLP*, No. 12 Civ. 6909 (SAS), 2013 WL 6087400, at *3 (S.D.N.Y. Nov. 19, 2013). In deciding the 12(b)(6) motion, the court must also draw all reasonable inferences in the non-moving party's favor. *See N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 119–20 (2d Cir. 2013).

---

[2] "In deciding a motion to dismiss under Rule 12(b)(6), the court may refer 'to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Fishbein v. Miranda*, 670 F. Supp. 2d 264, 271 (S.D.N.Y. 2009) (quoting *Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

## III. SERVICE OF PROCESS WAS PROPER

Defendant argues, as a preliminary matter, that it was not properly served with the summons and complaint in this action. (Mem. of Law of Def. Vitra International AG in Supp. of Mot. to Dismiss Pursuant to Fed. R. 12(b)(6) and (5) ("Def.'s Mem."), ECF No. 10, at 22–25.) Plaintiff served Defendant in Switzerland by registered mail. (*See* Aff. of Service, ECF No. 7.) Defendant claims that such service is "insufficient as a matter of law" because Switzerland is a party to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Service Convention") and does not permit service of process from foreign countries by mail. (Def.'s Mem. at 22–23; *see also id.* at 10.) Rather, according to Defendant, service must be made through the Swiss Central Authority. (*Id.* at 23.)

Here, service via registered mail was proper because Defendant consented to such service and waived its right to service otherwise. Under the express terms of the Lease:

> Tenant, *any guarantor of the performance of its obligations hereunder ("Guarantor")* and their successors and assigns hereby . . . *waive the personal service of any process* upon them in any action or proceedings therein *and consent that such process be served by certified or registered mail,* . . . directed . . . to Guarantor . . . . Such service shall be deemed made upon receipt.

(Decl., Ex. 3 (Lease), ¶ 85 (emphasis added).) Defendant tries to argue that it is not bound by this service of process provision because it is not a signatory to the Lease. (Def.'s Mem. at 24.) However, in the Guaranty, to which Defendant is a signatory, Defendant agreed to "the full, faithful, timely and prompt performance and observance of all the covenants, terms, conditions and agreements in the Lease to be performed and observed by Tenant." (Decl., Ex. 2 (Guaranty), § A.) Accordingly, by signing the Guaranty and affirming its obligations pursuant to the Lease, Defendant bound itself to the Lease's service of process provision. *See White Rose Food v. Saleh,*

7

99 N.Y.2d 589, 592 (2003). Accordingly, Defendant's motion to dismiss Plaintiff's complaint on the basis of improper service is denied.

## IV. PLAINTIFF FAILS TO STATE A CLAIM BECAUSE THERE WAS NO DEFAULT BY TENANT THAT TRIGGERED ANY OBLIGATION BY DEFENDANT

Defendant alternatively moves to dismiss Plaintiff's complaint for failure to state a claim. (Mem. at 12–22.) Both of Plaintiff's causes of action allege that Defendant breached the Guaranty by failing to ensure Tenant's performance of its own obligations under the Lease, which included, *inter alia*, promptly commencing the Initial Alterations, spending within nine months from the commencement of the Lease $1,912,500 in connection with those Initial Alterations, and paying any deficiencies to Plaintiff if Tenant failed to spend that minimum amount within the ninth-month period. (Compl. ¶¶ 5–85.) The first cause of action pertains to Tenant's alleged default under the Lease before its execution of the Settlement with Plaintiff on December 7, 2017, while the second cause of action pertains to Tenant's alleged default following the Settlement. (*See id.* ¶ 63.) Defendant argues that because Plaintiff must demonstrate some underlying default by Tenant in order to assert any claim against Defendant, and because there is no such default here, Plaintiff's complaint should be dismissed in its entirety. (Mem. at 11–12.)

"A guaranty is 'the promise to answer for the payment of some debt or the performance of some obligation, on default of such payment or performance, by a third person who is liable in the first instance[.] It is an obligation to answer for the debt of another.'" *Terwilliger v. Terwilliger*, 206 F.3d 240, 246 (2d Cir. 2000) (citation omitted). It is a "contract of secondary liability," and "[a] guarantor will be required to make payment only when the primary obligor has first defaulted." *Id.* (citation omitted). "A guarantor's obligation must be 'narrowly construed and cannot be extended by construction beyond the plain and explicit language of the contract.'" *Chase*

8

*Manhattan Bank, N.A. v. American Nat'l Bank & Trust Co. of Chicago*, 93 F.3d 1064, 1073 (2d Cir. 1996) (citation omitted).

Here, Plaintiff fails to state a claim against Defendant based on any alleged defaults of the Lease by Tenant that occurred before the execution of the Settlement. The Guaranty limits Defendant's obligations to those of Tenant under the Lease as modified or amended. (Decl., Ex. 2 (Guaranty), § C ("[T]he liability of [Defendant] hereunder shall be based upon the obligations of Tenant set forth in the Lease as the same may be altered, . . . modified, [or] amended.").) The Settlement settled all claims and counterclaims in the state action between Plaintiff and Tenant, including Plaintiff's counterclaim that Tenant breached the Lease, at least as of December 7, 2017. (*See* Decl., Ex. 6 (Settlement), at 2; Decl., Ex. 5 (State Action Answer and Countercl.), ¶¶ 144–58.) The Settlement also modified the Lease by extending Tenant's deadline to spend $1,912,500 for the Initial Alterations to nine months after Plaintiff's completion of the Landlord's Work. (Decl., Ex. 6 (Settlement), ¶ 9.) Accordingly, because Plaintiff already relinquished its claim that Tenant breached the Lease prior to the date of the Settlement, Plaintiff's claim here against Defendant based on any such breach is dismissed.

Dismissal of Plaintiff's claim based on Tenant's alleged default following the Settlement is similarly warranted, given the arbitral decisions finding that there has been no such default. "Under the doctrine of *res judicata*, or claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *EDP Med. Comput. Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007) (alteration in original) (citation omitted). Collateral estoppel, also referred to as "issue preclusion," bars relitigation of an issue when:

> (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair

9

opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.

*Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 400 (2d Cir. 2011) (citation omitted). "It is well settled that the related doctrines of res judicata and collateral estoppel apply to arbitration proceedings." *Burmah Oil Tankers, Ltd. v. Trisun Tankers, Ltd.*, 687 F. Supp. 897, 899 (S.D.N.Y. 1988) (citation omitted).

Here, Plaintiff's claim against Defendant is precluded by the arbitrator's decisions in the ongoing arbitration between Plaintiff and Tenant, which Plaintiff agreed are binding and unappealable. (*See* Decl., Ex. 6 (Settlement), ¶ 28.) The arbitrator found that Tenant is not in default of the Lease. Specifically, the arbitrator ruled in the second interim award that Tenant's delay in commencing the Initial Alterations was due to Plaintiff's misconduct and interference with obtaining regulatory approval. (Decl., Ex. 9 (Second Interim Award), at 23.) In the third interim award, the arbitrator found that Plaintiff has not completed the Landlord's Work. (Decl., Ex. 10 (Third Interim Award), at 5.) Under the Settlement, Tenant is not required to spend $1,912,500 for its Initial Alterations until nine months after Plaintiff's completion of the Landlord's Work. (Decl., Ex. 6 (Settlement), ¶ 9). As such, Tenant's obligations related to the Initial Alterations have not yet been triggered, and Tenant is not in default. Where Plaintiff chose a forum for its disputes and there is a binding decision by an arbitrator pursuant to a valid arbitration provision, Plaintiff may not then try to get a second bite at the apple.

In sum, because Defendant's only obligation is to guarantee the performance of Tenant's own, and there is no underlying default of the Lease by Tenant, Plaintiff may not try to use the Guaranty as an independent basis to try to recover from Defendant.

## V. CONCLUSION

Defendant's motion to dismiss, (ECF No. 9), is GRANTED. The Clerk of Court is directed to close the motion accordingly.

Dated: New York, New York
     March   , 2020
    **MAR 3 0 2020**

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge